FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11   PAUL LEE GARREN,              )   NO. CV 07-2401-R(E)
                                   )
12                  Petitioner,    )
                                   )
13        v.                       )   ORDER ADOPTING FINDINGS,
                                   )
14   M. C. KRAMER, Warden,         )   CONCLUSIONS AND RECOMMENDATIONS
                                   )
15                  Respondent.    )   OF UNITED STATES MAGISTRATE JUDGE
                                   )
16   _____)

17

18        Pursuant to 28 U.S.C. § 636, the Court has reviewed the

19   Petition, all of the records herein and the attached Report and

20   Recommendation of United States Magistrate Judge.  The Court approves

21   and adopts the Magistrate Judge's Report and Recommendation.

22

23        IT IS ORDERED that Judgment be entered denying and dismissing

24   the Petition with prejudice.

25   ///

26   ///

27   ///

28   ///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2  the Magistrate Judge's Report and Recommendation and the Judgment

3  herein by United States mail on Petitioner and counsel for

4  Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED:  _____July 10_____ 2008.

9

10

11                    _____

12                         MANUEL L. REAL
                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL LEE GARREN, | ) NO. CV 07-2401-R(E) |
| Petitioner, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION OF |
| | ) |
| M. C. KRAMER, Warden, | ) UNITED STATES MAGISTRATE JUDGE |
| Respondent. | ) |
| | ) |

This Report and Recommendation is submitted to the Honorable Manuel L. Real, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on April 11, 2007 ("Pet."), accompanied by an attached Memorandum ("Pet. Mem.") and Exhibits, including a lengthy memorandum of points and authorities labeled Petitioner's Exhibit 1

1  ("Pet. Mem., Ex. 1").  On July 26, 2007, Respondent filed an Answer

2  asserting that all of Petitioner's claims are procedurally defaulted.

3  On August 24, 2007, Petitioner filed a Reply.

4

5       On September 7, 2007, the Court issued an Order ruling that

6  Petitioner had met his interim burden under Bennett v. Mueller, 322

7  F.3d 573 (9th Cir.), cert. denied, 540 U.S. 938 (2003), and ordering

8  Respondent to file a Supplemental Answer either: (1) attempting to

9  meet Respondent's burden under Bennett v. Mueller; or (2) expressly

10  waiving the procedural default defense and addressing the merits of

11  the Petition.  On November 29, 2007, Respondent filed a Supplemental

12  Answer expressly waiving the state procedural bar of untimeliness and

13  addressing the merits of the Petition.  On January 25, 2008,

14  Petitioner filed a Supplemental Reply ("Supp. Reply"), accompanied by

15  an attached Memorandum ("Supp. Reply Mem."), raising, inter alia, a

16  claim that Petitioner's trial counsel allegedly rendered ineffective

17  assistance by failing to present mitigating evidence at sentencing.

18

19       On January 30, 2008, the Court issued an "Order re Exhaustion,"

20  deeming Petitioner's claim that his trial counsel ineffectively failed

21  to present mitigating evidence at sentencing to be unexhausted, and

22  ordering Petitioner to file either: (1) a document stating

23  Petitioner's intent to delete and abandon the claim of ineffective

24  assistance of trial counsel for allegedly failing to present

25  mitigating evidence for sentencing purposes; (2) a document requesting

26  dismissal of the entire proceeding without prejudice; or (3) a motion

27  for a stay pursuant to Rhines v. Weber, 544 U.S. 269 (2005).  On

28  February 8, 2008, Petitioner filed a "Request to Delete and Abandon

1  the claim of ineffective assistance of trial counsel for Allegedly

2  failing to present mitigating evidence for [sentencing] purposes,"

3  expressly abandoning this claim.

4

5                                **BACKGROUND**

6

7       On July 28, 1998, security officials at a Home Base store in

8  Ventura County caught Petitioner stealing tools worth approximately

9  $120 (Reporter's Transcript ("R.T.") 14-20).  According to a motion

10 filed by Petitioner's counsel, Petitioner received a citation but

11 failed to appear (see Clerk's Transcript ("C.T.") 28).  A warrant was

12 not served on Petitioner until December 9, 1999 (see C.T. 28).

13

14      Meanwhile, Petitioner was involved in another incident involving

15 the theft of tools from a Home Base store, this time in San Bernardino

16 County (see C.T. 22-23, 28).  The San Bernardino incident allegedly

17 involved Plaintiff's use of a "box cutter" or "X-acta" knife to cut a

18 store employee (see C.T. 29).  On November 24, 1999, Petitioner was

19 arraigned in the San Bernardino County Superior Court on one count of

20 robbery and one count of assault with a deadly weapon or with force

21 likely to cause great bodily injury (Respondent's Lodgment S, pp. 5-

22 6).[1]  On December 7, 1999, Petitioner pled guilty to the San

23 Bernardino charges pursuant to a plea agreement and requested

24 immediate sentencing (Respondent's Lodgment S, pp. 8-9).  The court

25

26

27  _____

28        [1]    Because Respondent's Lodgment S does not bear
    consecutive page numbers, the Court has supplied page numbers.

                                   3

1  took Petitioner's "Vargas" waiver,[2] and sentenced Petitioner to a

2  total term of eight years (id.).  The court ordered Petitioner

3  released on his own recognizance upon the filing of a signed agreement

4  to appear, set a resentencing date of February 10, 2000 on the Vargas

5  waiver, and referred the matter to the probation office for a

6  presentence investigation and report (id.).

7

8      In the Ventura County proceedings, the court held a competency

9  hearing and, on February 9, 2000 (the day before resentencing in the

10  San Bernardino case), found Petitioner incompetent to stand trial and

11  transferred him to Patton State Hospital (see C.T. 28).[3]  On

12  February 10, 2000, Petitioner did not appear in the San Bernardino

13  Superior Court (Respondent's Lodgment S, p. 10).  The docket states

14  Petitioner was in custody in Ventura County (id.).  The matter was

---

16      [2]  If a defendant enters into a plea bargain, but fails to
appear at sentencing, the court may refuse to approve the plea
17  bargain, and in that case the defendant may withdraw the plea
pursuant to California Penal Code section 1192.5.  See People v.
18  Cruz, 44 Cal. 3d 1247, 1250-51, 246 Cal. Rptr. 1, 752 P.2d 439
(1988).  Under People v. Vargas, 223 Cal. App. 3d 1107, 273 Cal.
19  Rptr. 48 (1990), a defendant may waive the right to withdraw his
or her plea upon failure to appear at sentencing and agree that a
20  specified longer term may be imposed in the event of a failure to
appear.  See also Turner v. Castro, 2001 WL 1382100, at *3 (N.D.
21  Cal. Nov. 1, 2001), aff'd, 58 Fed. App'x 749 (9th Cir. 2003) ("a
plea agreement validly can provide for a specified greater term
22  to be imposed in the event the defendant fails to appear for
sentencing, and to a specified lesser term if the defendant does
23  appear") (citations omitted).

24

25      [3]  The record does not contain any transcript of the
competency proceedings.  The Court derives its description of
26  those proceedings from the motion to strike the prior convictions
filed by Petitioner's counsel and the Patton State Hospital
27  report lodged herein by Respondent.  The fact that these
proceedings occurred is undisputed.  The lack of a transcript of
28  these proceedings is immaterial to the present adjudication.

4

1  continued to February 14, 2000 (id.).  On February 14, 2000,

2  Petitioner did not appear in the San Bernardino Superior Court

3  (Respondent's Lodgment S, p. 11).  The docket states Petitioner was

4  not transported from Ventura County (id.).  The matter was continued

5  to February 15, 2000 (id.).  On February 15, 2000, Petitioner did not

6  appear in the San Bernardino Superior Court (Respondent's Lodgment S,

7  p. 12).  The docket states Petitioner was "still not transported"

8  (id.).  The matter was continued to February 28, 2000 (id.).  On

9  February 28, 2000, Petitioner did not appear in the San Bernardino

10 Superior Court (Respondent's Lodgment S, p. 13).  The docket states

11 that the district attorney was checking whether Petitioner was in

12 custody in another county (id.).  The matter was continued to March 2,

13 2000 (id.).  On March 2, 2000, Petitioner did not appear in the San

14 Bernardino Superior Court (Respondent's Lodgment S, p. 14).  The

15 docket states Petitioner was "in Patton State Hospital on another case

16 out of another county" (id.).  The court issued a bench warrant for

17 Petitioner's arrest (id.).

18

19     On June 23, 2000, Petitioner was returned to the Ventura County

20 Superior Court after the Patton State Hospital Medical Director

21 certified that Petitioner was competent to stand trial (see C.T. 28;

22 Respondent's Lodgment T, pp. 4-7).[4]  Following a second competency

23 hearing, the Ventura County Superior Court found Petitioner competent

24 to stand trial (see C.T. 28).

25 ///

26 ///

27 _____

        [4]    Because Respondent's Lodgment T does not bear
28 consecutive page numbers, the Court has supplied page numbers.

5

1   Following a preliminary hearing, the Ventura County Superior

2   Court held Petitioner to answer on April 11, 2001 (C.T. 28-29).   On

3   April 25, 2001, the District Attorney for the County of Ventura filed

4   an Information charging Petitioner with one count of petty theft with

5   a prior in violation of California Penal Code sections 484(a) and 666,

6   based on an alleged prior 1987 grand theft conviction (C.T. 1-2).   The

7   Information further alleged that Petitioner had suffered four prior

8   robbery convictions qualifying as "strikes" under California's "Three

9   Strikes Law," California Penal Code sections 667(b) - (i), and

10   1170.12(a) - (d) (C.T. 1-2).[5]

11

12   On July 18, 2001, in the Ventura County proceedings, Petitioner

13   waived a jury trial (R.T. 2; C.T. 34).   Also on that date,

14   Petitioner's counsel filed a motion to strike the prior conviction

15   allegations pursuant to People v. Superior Court (Romero), 13 Cal. 4th

16   497, 53 Cal. Rptr. 2d 789, 917 P.2d 628 (1996) (C.T. 27-32).   The

17   prosecution filed an opposition to the motion (C.T. 22-26).   On

18   July 19, 2001, the Ventura County Superior Court found Petitioner

19   guilty, and found true the prior conviction grand theft and robbery

20   allegations (C.T. 36-38).

21   ///

22   ///

23   _____

24        [5]   The Three Strikes Law consists of two nearly identical
     statutory schemes.   The earlier provision, enacted by the

25   Legislature, was passed as an urgency measure, and is codified as
     California Penal Code §§ 667(b) - (i) (eff. March 7, 1994).   The

26   later provision, an initiative statute, is embodied in California
     Penal Code § 1170.12 (eff. Nov. 9, 1994).   See generally People

27   v. Superior Court (Romero), 13 Cal. 4th 497, 504-05, 53 Cal.
     Rptr. 2d 789, 917 P.2d 628 (1996).   The prosecution charged

28   Petitioner under both versions (C.T. 1-2).

6

1    On October 16, 2001, the Ventura County Superior Court ordered

2  the preparation of a psychologist's report regarding Petitioner (C.T.

3  39-40).  After several continuances, on November 21, 2001, the Ventura

4  County Superior Court denied Petitioner's Romero motion and sentenced

5  Petitioner to a term of 25 years to life under the Three Strikes Law

6  (C.T. 48-51).

7

8    On June 27, 2002, Petitioner was arraigned in the San Bernardino

9  Superior Court on the bench warrant (Respondent's Lodgment S, p. 16).

10  The court discharged the bench warrant (id.).  Petitioner denied a

11  violation of the Vargas waiver, and the court set a resentencing "on

12  Vargas waiver" for July 24, 2002 (id.).  On July 24, 2002, pursuant to

13  a plea bargain, the San Bernardino Superior Court allowed Petitioner

14  to withdraw his plea to the aggravated assault count, and dismissed

15  that count (Respondent's Lodgment S, pp. 18-19).  The court imposed a

16  two-year sentence on the robbery charge (id.).

17

18    The Court of Appeal affirmed the judgment in the Ventura County

19  case on May 26, 2005 (Respondent's Lodgment F).  The California

20  Supreme Court denied Petitioner's petition for review on August 10,

21  2005 (Respondent's Lodgment J).

22

23    Petitioner filed a habeas corpus petition in the Ventura County

24  Superior Court on March 23, 2006, which that court denied on May 17,

25  2006 (Respondent's Lodgments K, L).  Petitioner filed a habeas corpus

26  petition in the Ventura County Superior Court on June 6, 2006, which

27  that court denied on July 6, 2006 (Respondent's Lodgments M, N).

28  Petitioner filed a habeas corpus petition in the California Court of

1  Appeal on July 17, 2006, which that court denied on July 20, 2006

2  (Respondent's Lodgments O, P).[6]  Petitioner filed a habeas corpus

3  petition in the California Supreme Court on August 2, 2006

4  (Respondent's Lodgment Q).  On February 14, 2007, the California

5  Supreme Court denied the petition with a citation to In re Robbins,

6  18 Cal. 4th 770, 780, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998),

7  signifying that the petition was untimely under California law.[7]

8

9                          **PETITIONER'S CONTENTIONS**

10

11     Petitioner contends:

12

13     1.    Petitioner allegedly received an unlawful sentence, because

14  the crime of petty theft with a prior theft-related conviction

15  assertedly is not a felony triggering application of the Three Strikes

16  Law (Pet., Ground One, p. 5; Pet. Mem., Ex. 1, pp. 1-17; Supp. Reply

17  Mem., pp. 1-17);

18

19     2.    The sentencing court allegedly used assertedly

20  unconstitutional prior convictions to impose a Three Strikes sentence

21  _____

22     [6]    The copy of Petitioner's habeas corpus petition filed
    in the Court of Appeal which was lodged by Respondent does not
23  bear a filing date.  However, the Court takes judicial notice of
    the docket in Garren v. People, Court of Appeal case number
24  B192297, available on the California courts' website at
    www.courtinfo.ca.gov, which shows the petition was filed on
25  July 17, 2006.  See Mir v. Little Company of Mary Hosp., 844 F.2d
    646, 649 (9th Cir. 1988) (court may take judicial notice of court
26  records).

27     [7]    As previously indicated, Respondent has waived the
28  procedural default defense.

                                    8

1 (Pet., Ground Two, p. 5; Pet. Mem., Ex. 1, pp. 18-31; Supp. Reply
2 Mem., pp. 18-24);

3

4       3.   The trial court allegedly abused its discretion by denying
5 Petitioner's "Romero" motion (Pet., Ground Three, p. 6; Pet. Mem.,
6 Ex. 1, pp. 32-39; Supp. Reply Mem., pp. 25-31);

7

8       4.   The prosecutor allegedly committed misconduct by assertedly
9 presenting false evidence to the sentencing court (Pet., Ground Four,
10 p. 6; Pet. Mem., Ex. 1, pp. 40-48; Supp. Reply Mem., pp. 32-35);

11

12      5.   The prosecution allegedly suppressed evidence which
13 assertedly was exculpatory because the evidence allegedly would have
14 put Petitioner in a "different light" at sentencing.  See Brady v.
15 Maryland, 373 U.S. 83 (1963) (Pet., Ground Five, p. 6; Pet. Mem.,
16 Ex. 1, pp. 49-53; Supp. Reply Mem., pp. 35-38);

17

18      6.   The trial court allegedly compelled Petitioner to stand
19 trial although Petitioner was assertedly incompetent to do so (Pet.,
20 Ground Six, p. 6; Pet. Mem., Ex. 1, pp. 54-61; Supp. Reply Mem.,
21 pp. 38-42);

22

23      7.   Petitioner allegedly was subject to multiple prosecution and
24 punishment for the same act, assertedly in violation of the Double
25 Jeopardy Clause (Pet., Ground Seven, p. 6; Pet. Mem., Ex. 1, pp. 62-
26 67; Supp. Reply Mem., pp. 42-48);

27 ///

28 ///

1     8.    Petitioner's sentence allegedly violated the Ex Post Facto

2  Clause and Petitioner's plea agreement in a previous case (Pet.,

3  Ground Eight, p. 6; Pet. Mem., Ex. 1, pp. 28-31, 68-82; Supp. Reply

4  Mem., pp. 48-51);

6     9.    Petitioner's trial counsel assertedly rendered ineffective

7  assistance, by allegedly:

9     (a)  Failing to investigate the law and to argue that

10  Petitioner's conviction for petty theft with a prior theft-

11  related conviction did not constitute a felony triggering a Three

12  Strikes sentence;

14     (b)  Failing to investigate Petitioner's prior convictions

15  and to file a "Sumstine" motion challenging Petitioner's prior

16  convictions on "Boykin/Tahl" grounds;[8]

18     (c)  Failing to investigate, and to inform the sentencing

19  court about, the facts in the San Bernardino case;

21     (d)  Failing to move for a continuance to permit the

22  preparation of a new psychological report;

23  ///

24  ///

---

26     [8]   See Boykin v. Alabama, 395 U.S. 238 (1969); In re Tahl,
1 Cal. 3d 122, 81 Cal. Rptr. 577, 460 P.2d 449 (1969), cert.
27  denied, 398 U.S. 911 (1970), overruled in part, People v. Howard,
1 Cal. 4th 1132, 5 Cal. Rptr. 2d 268, 824 P.2d 1315 (1992), cert.
28  denied, 506 U.S. 942 (1992).

(e)  Failing to prepare Petitioner for an interview with a
probation officer, to ask Petitioner why Petitioner did not talk
to the probation officer, and to review the probation report; and

(f)  Assertedly tricking or coercing Petitioner into waiving
his jury trial right

(Pet., Grounds One and Nine; Pet. Mem, Ex. 1, pp. 56-57, 83-89; Supp.
Reply Mem., pp. 52-58); and

10.  Petitioner's appellate counsel allegedly rendered
ineffective assistance, assertedly by failing to raise on appeal the
issues in the Petition (Pet., Ground Ten, p. 6; Pet. Mem., Ex. 1,
pp. 90-91; Supp. Reply Mem., p. 59).

## STANDARD OF REVIEW

A federal court may not grant an application for writ of habeas
corpus on behalf of a person in state custody with respect to any
claim that was adjudicated on the merits in state court proceedings
unless the adjudication of the claim: (1) "resulted in a decision that
was contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the
United States"; or (2) "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. § 2254(d) (as
amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);
Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.

11

1  362, 405-09 (2000).

2

3    "Clearly established Federal law" refers to the governing legal

4  principle or principles set forth by the Supreme Court at the time the

5  state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

6  (2003).  A state court's decision is "contrary to" clearly established

7  Federal law if: (1) it applies a rule that contradicts governing

8  Supreme Court law; or (2) it "confronts a set of facts . . .

9  materially indistinguishable" from a decision of the Supreme Court but

10  reaches a different result.  See Early v. Packer, 537 U.S. at 8

11  (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

12

13    Under the "unreasonable application prong" of section 2254(d)(1),

14  a federal court may grant habeas relief "based on the application of a

15  governing legal principle to a set of facts different from those of

16  the case in which the principle was announced."  Lockyer v. Andrade,

17  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

18  U.S. at 24-26 (state court decision "involves an unreasonable

19  application" of clearly established federal law if it identifies the

20  correct governing Supreme Court law but unreasonably applies the law

21  to the facts).

22

23    A state court's decision "involves an unreasonable application of

24  [Supreme Court] precedent if the state court either unreasonably

25  extends a legal principle from [Supreme Court] precedent to a new

26  context where it should not apply, or unreasonably refuses to extend

27  that principle to a new context where it should apply."  Williams v.

28  Taylor, 529 U.S. at 407 (citation omitted).

12

1    "In order for a federal court to find a state court's application

2    of [Supreme Court] precedent 'unreasonable,' the state court's

3    decision must have been more than incorrect or erroneous." Wiggins v.

4    Smith, 539 U.S. 510, 520 (2003) (citation omitted).   "The state

5    court's application must have been 'objectively unreasonable.'"   Id.

6    at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

7    1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

8

9        In applying these standards, this Court looks to the last

10   reasoned state court decision.   See Franklin v. Johnson, 290 F.3d

11   1223, 1233 n.3 (9th Cir. 2002).   Where no such reasoned opinion

12   exists, as where a state court rejected a claim in an unreasoned

13   order, this Court must conduct an independent review to determine

14   whether the decisions were contrary to, or involved an unreasonable

15   application of, "clearly established" Supreme Court precedent.   See

16   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).   If the state

17   court declined to decide a federal constitutional claim on the merits,

18   this Court must consider that claim under a de novo standard of review

19   rather than the more deferential "independent review" of unexplained

20   decisions on the merits authorized by Delgado v. Lewis.   See Lewis v.

21   Mayle, 391 F.3d 989, 996 (9th Cir. 2004) (standard of de novo review

22   applicable to claim state court did not reach on the merits).

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

13

1

2

**DISCUSSION**

3        For the reasons discussed below, the Petition should be denied

4   and dismissed on the merits with prejudice.[9]

5

6   **I.   Petitioner's Claim that His Conviction for Petty Theft with a**

7        **Theft-Related Conviction Did Not Warrant a Three Strikes Sentence**

8        **Does Not Merit Habeas Relief.**

9

10       California law authorizes a Three Strikes sentence "if a

11  defendant has been convicted of a felony and it has been pled and

12  proved that the defendant has one or more [serious or violent] prior

13  felony convictions . . . ." Cal. Penal Code § 667(c)(1); see also

14  § 1170.12(c)(1).  "[A]ny felony triggers a longer sentence under the

15  Three Strikes law as long as the defendant has sustained at least one

16  strike." People v. Strong, 87 Cal. App. 4th 328, 344, 104 Cal. Rptr.

17  2d 490 (2001) (footnote omitted); see also Lockyer v. Andrade, 538

18  U.S. at 67 ("any felony can constitute the third strike, and thus can

19  subject a defendant to a term of 25 years to life in prison")

20  (citations omitted).

21

22       In California, the potential sentence for a given offense

23  determines the status of that offense as felony or misdemeanor.  See

24  Cal. Penal Code §§ 17(a), (b); People v. Terry, 47 Cal. App. 4th 329,

25  ───────────────────────────

26       [9]    The Court has read, considered and rejected on the
    merits all of Petitioner's contentions.  The Court discusses

27  Petitioner's principal contentions herein.

28

1  331-32, 54 Cal. Rptr. 2d 769 (1996).  A felony is a crime punishable

2  by death or imprisonment in state prison.  Cal. Penal Code § 17(a).

3  Every other crime is either a misdemeanor or an infraction.  <u>Id.</u>

4  Certain offenses, known colloquially as "wobblers," are punishable

5  either by a prison sentence or by fine or incarceration in the county

6  jail.  <u>See</u> Cal. Penal Code § 17(b); <u>People v. Williams</u>, 49 Cal. App.

7  4th 1632, 1639 n.2, 57 Cal. Rptr. 2d 44 (1996) ("A wobbler is a

8  special class of crime which could be classified and punished as a

9  felony or misdemeanor depending upon the severity of the facts

10  surrounding its commission.") (citation, internal quotations and

11  brackets omitted).

12

13      The crime of simple petty theft is punishable by a fine or

14  imprisonment in the county jail for not more than six months, or both,

15  and hence is a misdemeanor.  <u>See</u> Cal. Penal Code §§ 484, 487f, 490.

16  The crime of petty theft with a prior theft-related conviction is a

17  "wobbler," punishable either by a county jail term or a state prison

18  term.  <u>See</u> Cal. Penal Code § 666; <u>Ewing v. California</u>, 538 U.S. at 16;

19  <u>Locker v. Andrade</u>, 538 U.S. at 67; <u>People v. Terry</u>, 47 Cal. App. 4th

20  at 331-32.

21

22      "Under California law, where the offense is alternatively a

23  felony or a misdemeanor, it is regarded as a felony for every purpose

24  until judgment. [citation]."  <u>United States v. Robinson</u>, 967 F.2d 287,

25  293 (9th Cir. 1992); <u>see</u> <u>People v. Upsher</u>, 155 Cal. App. 4th 1311,

26  1320, 66 Cal. Rptr. 3d 481 (2007).  Here, because Petitioner had a

27  prior theft-related conviction, Petitioner's petty theft was charged

28  as a felony, tried as a felony, and sentenced as a felony.

15

1    Nevertheless, Petitioner contends his conviction for petty theft

2  with a prior theft-related conviction constituted only a misdemeanor

3  conviction, not a felony conviction triggering a Three Strikes

4  sentence.   The Ventura County Superior Court rejected this contention,

5  ruling that, under California law, Petitioner was convicted of a

6  felony, not a misdemeanor (see Respondent's Lodgment N, p. 3).

7

8    Petitioner's claim presents only a state law issue not cognizable

9  on federal habeas review.   Federal habeas corpus relief may be granted

10 "only on the ground that [Petitioner] is in custody in violation of

11 the Constitution or laws or treaties of the United States."   28 U.S.C.

12 § 2254(a).   Mere errors in the application of state law are not

13 cognizable on habeas corpus.   Estelle v. McGuire, 502 U.S. 62, 67-68

14 (1991).   Matters relating to sentencing and serving of a sentence

15 generally are governed by state law and do not raise a federal

16 constitutional question.   See Miller v. Vasquez, 868 F.2d 1116, 1118-

17 19 (9th Cir. 1989) (holding that question of whether particular prior

18 conviction qualifies for sentence enhancement under California law is

19 not cognizable on federal habeas corpus); see also Middleton v. Cupp,

20 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021

21 (1986) (federal habeas relief "unavailable for alleged error in the

22 interpretation or application of state law"); Sturm v. California

23 Adult Authority, 395 F.2d 446, 448 (9th Cir. 1967), cert. denied, 395

24 U.S. 947 (1969) ("a state court's interpretation of its [sentencing]

25 statute does not raise a federal question").   "[S]tate courts are the

26 ultimate expositors of state law."   Mullaney v. Wilbur, 421 U.S. 684,

27 691 (1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th

28 Cir.), cert. denied, 493 U.S. 942 (1989).

16

1    Moreover, the state court did not err in determining, as a matter

2  of state law, that Petitioner's conviction for petty theft with a

3  prior theft-related conviction was a felony conviction triggering a

4  potential Three Strikes sentence.   California courts repeatedly have

5  rejected Petitioner's contrary argument.   <u>See</u> <u>People v. Nguyen</u>, 54

6  Cal. App. 4th 705, 711, 63 Cal. Rptr. 2d 173 (1997) (rejecting

7  assertion that petty theft with a prior was only a misdemeanor to

8  which Three Strikes Law did not apply); <u>People v. Bury</u>, 50 Cal. App.

9  4th 1873, 1876, 58 Cal. Rptr. 2d 682 (1996) (Three Strikes sentence

10  for current offense petty theft with prior theft-related conviction

11  proper; petty theft with a prior was "not a misdemeanor that carried

12  the potential for a longer sentence," but "was, simply, a felony");

13  <u>People v. Stevens</u>, 48 Cal. App. 4th 982, 985, 56 Cal. Rptr. 2d 13

14  (1996).[10]   Therefore, Petitioner has not shown any due process

15  violation.

16

17    For the foregoing reasons, the state courts' rejection of this

18  claim was not contrary to, or an objectively unreasonable application

19

20    [10]    Petitioner's reliance on <u>United States v. Corona-</u>
<u>Sanchez</u>, 291 F.3d 1201 (9th Cir. 2002) (en banc), and similar
21  federal cases, is unavailing.  <u>Corona-Sanchez</u> involved the issue
of whether a California conviction for petty theft with a prior
22  theft-related conviction constituted an aggravated felony under
the United States Sentencing Guidelines.  Applying the
23  "categorical approach" commanded by <u>Taylor v. United States</u>, 495
U.S. 575 (1990), the Ninth Circuit held that, under the
24  Guidelines, petty theft was not a "theft offense" for which the
term of imprisonment was at least one year, because the
25  "categorical approach" required the court to separate the
recidivist enhancement of California Penal Code section 666 from
26  the underlying theft.  <u>Id.</u> at 1213.  In contrast, the issue here
is simply whether Petitioner's instant offense constituted a
27  felony under California law, which it did.

28

1  of, any clearly established Federal law as determined by the United

2  States Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not

3  entitled to habeas relief on Ground One of the Petition.

4

5  II.  **Petitioner's Challenge to the Constitutionality of His Prior**

6       **Robbery Convictions Does Not Merit Habeas Relief.**

7

8       As indicated above, the trial court found true the allegations

9  that Petitioner had suffered four prior robbery convictions qualifying

10 as "strikes."  Petitioner alleges that these prior convictions were

11 assertedly the result of Petitioner's plea of nolo contendere

12 allegedly obtained in violation of Boykin v. Alabama, 395 U.S. 238

13 (1969) ("Boykin") and In re Tahl, 1 Cal. 3d 122, 81 Cal. Rptr. 577,

14 460 P.2d 449 (1969), cert. denied, 398 U.S. 911 (1970), overruled in

15 part, People v. Howard, 1 Cal. 4th 1132, 5 Cal. Rptr. 2d 268, 824 P.2d

16 1315 (1992), cert. denied, 506 U.S. 942 (1992) ("Tahl").[11]

17 Petitioner also alleges that his counsel in the robbery case

18 ineffectively advised Petitioner of the nature of the charges and the

19 consequences of the plea, and assertedly coerced Petitioner to plead

20 nolo contendere.[12]

21 ///

---

22  [11]   Under Boykin and Tahl, a conviction may be
23  constitutionally invalid if the defendant pled guilty without
    waiving: (1) the right to a jury trial; (2) the right to confront
24  adverse witnesses; and (3) the privilege against self-
    incrimination.  Boykin, 395 U.S. at 243; Tahl, 1 Cal. 3d at 132.
25

26  [12]   Petitioner contends, among other things, that he told
27  his attorney that Petitioner did not commit all of the robberies
    or use a real gun in the robberies he did commit, but rather used
28  a toy gun (Pet. Mem., Ex. 1, p. 22).

1    Under <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394

2    (2001), a habeas petitioner may challenge a prior conviction used to

3    enhance the petitioner's current sentence only where: (1) there was a

4    failure to appoint counsel in violation of the Sixth Amendment; or

5    (2) the petitioner cannot be faulted for failing to obtain a timely

6    review of a constitutional claim, either because a state court refused

7    to rule on a constitutional claim properly presented to it, or because

8    the petitioner uncovered "compelling evidence" of his innocence after

9    the time for review had expired that could not have been timely

10   discovered. <u>Id.</u> at 403-05. Petitioner's challenge to his prior

11   convictions fails to satisfy either of these criteria. Petitioner

12   does not assert a failure to appoint counsel. Nor is there any

13   indication in the record that a state court ever refused to rule on

14   Petitioner's properly presented challenge to his prior conviction, or

15   that Petitioner has uncovered new "compelling evidence" of his

16   innocence that could not have been timely discovered. Therefore,

17   Petitioner's challenge to the constitutionality of his prior robbery

18   convictions does not merit habeas relief. <u>See Lackawanna County Dist.</u>

19   <u>Attorney v. Coss</u>, 532 U.S. at 403-04; <u>Nunes v. Ramirez-Palmer</u>, 485

20   F.3d 432, 443 (9th Cir.), <u>cert. denied</u>, 128 S. Ct. 404 (2007) (claim

21   that prior conviction was obtained in violation of <u>Boykin/Tahl</u>

22   barred); <u>Santos v. Maddock</u>, 249 Fed. App'x 523 (9th Cir. 2007), <u>cert.</u>

23   <u>denied</u>, 128 S. Ct. 919 (2008) (claim that appellate counsel provided

24   ineffective assistance with respect to prior conviction barred).[13]

25   Petitioner is not entitled to habeas relief on Ground Two of the

26

27        [13]    The Court may cite unpublished Ninth Circuit opinions
     issued on or after January 1, 2007. <u>See</u> U.S. Ct. App. 9th Cir.
28   Rule 36-3(b); Fed. R. App. P. 32.1(a).

1   Petition.

2

3   III.  **The Trial Court's Denial of Petitioner's Motion to Strike the**

4        **Prior Conviction Allegations Does Not Merit Habeas Relief.**

5

6        A.    **Background**

7

8        Prior to trial, the court held a hearing on Petitioner's motion

9   to strike the prior conviction allegations pursuant to People v.

10  Romero, supra (R.T. 4-11).  Petitioner's counsel argued that

11  Petitioner had struggled with a drug problem, that the prior robberies

12  were approximately 20 years old, and that Petitioner had mental

13  problems (R.T. 5-7).  Petitioner's counsel acknowledged that the San

14  Bernardino case was a "problem," observing that the offense in that

15  case was a shoplifting that "got worse" because it "turned into a 211,

16  an Estes-type robbery,"[14] and that a "worker there at the Home Base in

17  that other county was cut" (R.T. 7).  Counsel suggested that the court

18  should let the San Bernardino authorities "deal with that" (R.T. 7).

19

20       The prosecutor responded, arguing that, while Petitioner did have

21  a "drug addiction problem and mental illness," his criminal history

22  showed it was likely he would commit more crimes (R.T. 8-10).  The

23  ─────────────────

24       [14]   See Cal. Penal Code § 211 ("Robbery is the felonious
     taking of personal property in the possession of another, from
25   his person or immediate presence, and against his will,
     accomplished by means of force or fear."); People v. Estes, 147
26   Cal. App. 3d 23, 27-28, 194 Cal. Rptr. 909 (1983) ("a robbery
     occurs when defendant uses force or fear in resisting attempts to
27   regain the property or in attempting to remove the property from
     the owner's immediate presence regardless of the means by which
28   defendant originally acquired the property").

1  court reserved its ruling on the motion (R.T. 11).

2

3      On July 18, 2001, the court referred Petitioner to the probation

4  office for a presentence examination and report, and set a sentencing

5  date of August 16, 2001 (R.T. 30).  On August 16, 2001, the court

6  indicated that it had the probation report, a letter from Petitioner's

7  grandparents, and a report from a psychologist, Dr. Emerick, which the

8  doctor had prepared about a year before in connection with the

9  competency proceedings (R.T. 31).  The court indicated that there was

10 a "possibility that the Court could be better informed" if it had a

11 more recent psychologist's report (R.T. 32).  The court also noted

12 that the probation report showed that Petitioner received a term of

13 eight years in the San Bernardino proceedings (R.T. 32).  The

14 prosecutor indicated that she had spoken to the prosecutor in the San

15 Bernardino case "awhile ago" (R.T. 32).  The following occurred:

16

17       [THE PROSECUTOR]:  . . .  I think what happened was it

18     was a plea bargain, so it was agreed upon what the sentence

19     would be, and then he didn't show up for sentencing, but

20     that's because he was arrested in this case.  So I don't

21     think he was sentenced, but I think there was an agreement

22     for sentence according to what I understood from the deputy

23     D.A.

24

25       THE CLERK:  It shows that on 3/2 of 2000 he FTA'd, and

26     there was a bench warrant issued.

27 ///

28 ///

1     THE COURT:  Right, yeah, the probation report says

2     that, but it also says eight years CDC.

3

4     [THE PROSECUTOR]:  I think that's what was agreed upon,

5     but I don't think they ever imposed it.

6

7  (R.T. 32).

8

9     The court reappointed Dr. Emerick to examine Petitioner and

10  write a report "outlining her opinion as to what effect, if any,

11  Mr. Garren's mental condition had on his prior criminal activity or it

12  may [sic] mitigate his prior criminal activity including the offense

13  in this case in San Bernardino and the priors that are mentioned in

14  the police report."  The court continued the sentencing date to

15  September 6.  Id.  On September 6, 2001, the court continued the

16  sentencing date to November 6, 2001, because the court did not yet

17  have Dr. Emerick's report (R.T. 36-37).  On November 6, 2001, the

18  court said it still did not have the report, and continued the

19  sentencing date to November 21, 2001 (R.T. 38-39).

20

21     On November 21, 2001, the court heard the Romero motion.

22  Petitioner's counsel argued that Petitioner suffered from a serious

23  mental condition, and that his serious prior convictions were remote

24  in time (R.T. 42-43).  Although the probation report indicated

25  Petitioner had received an eight-year sentence in the San Bernardino

26  case, Petitioner's counsel said Petitioner had not yet been sentenced

27  in that case (R.T. 42-43).  Petitioner's counsel argued that the court

28  should let the San Bernardino authorities handle that case, and should

22

1  not impose a life sentence in the Ventura case (R.T. 43-44).   The

2  prosecutor acknowledged that Petitioner was a paranoid schizophrenic,

3  but argued that the record warranted a Three Strikes sentence (R.T.

4  44-45).

5

6      The court said:

7

8      Frankly, if it weren't for the San Bernardino situation, I

9      think I would bend in favor of striking at least three of --

10     well, probably three of the four strikes.  But that's what

11     stops me.  It's that violent act that occurred after this

12     offense occurred that I think indicates to the court, as the

13     district attorney says, that he's still a danger, albeit he

14     has a mental problem and a drug problem.

15

16  (R.T. 45).  The court denied the Romero motion and imposed a Three

17  Strikes sentence of 25 years to life (R.T. 45).

18

19  B.   **Discussion**

20

21      Petitioner contends the trial court did not exercise its

22  discretion adequately in denying Petitioner's motion to strike the

23  prior conviction allegations.  Petitioner alleges that the court based

24  its decision on assertedly false evidence, failed to continue the

25  hearing to obtain a new psychologist's report, and failed to exercise

26  "informed discretion" (Pet. Mem., Ex. 1, pp. 32-39).  Petitioner also

27  asserts that the court improperly considered hearsay evidence in

28  violation of Crawford v. Washington, 541 U.S. 36 (2004).

1    As previously indicated, matters relating to sentencing and

2    serving of a sentence generally are governed by state law and do not

3    raise a federal constitutional question.  See Miller v. Vasquez, 868

4    F.2d at 1118-19 (9th Cir. 1989); Middleton v. Cupp, 768 F.2d at 1085;

5    Sturm v. California Adult Authority, 395 F.2d at 448.  Petitioner's

6    contention that the trial court improperly exercised its discretion

7    under state law does not allege any claim for federal habeas relief.

8    See Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on

9    other grounds, 538 U.S. 901 (2003); Ely v. Terhune, 125 F. Supp. 2d

10   403, 411 (C.D. Cal. 2000).

11

12   State laws providing for a method regarding the exercise of

13   discretion in sentencing may create a constitutionally protected

14   liberty interest under the due process clause.  See Hicks v. Oklahoma,

15   447 U.S. 343, 346 (1980); Walker v. Deeds, 50 F.3d 670, 672-73 (9th

16   Cir. 1995).  However, even if any liberty interest were implicated

17   here, Petitioner's claims would lack merit.

18

19   In People v. Williams, 17 Cal. 4th 148, 161, 69 Cal. Rptr. 2d

20   917, 948 P.2d 429 (1998), the California Supreme Court held that, in

21   determining whether to exercise its discretion to strike a prior

22   conviction allegation under People v. Romero, "the court in question

23   must consider whether, in light of the nature and circumstances of

24   [the defendant's] present felonies and prior serious and/or violent

25   felony convictions, and the particulars of his background, character,

26   and prospects, the defendant may be deemed outside the [Three Strikes

27   Law's] spirit, in whole or in part, and hence should be treated as

28   though he had not previously been convicted of one or more serious

24

1  and/or violent felonies." "Extraordinary must the circumstance be by

2  which a career criminal can be deemed to fall outside the spirit of

3  the very statutory scheme within which he squarely falls and whose

4  continued criminal career the law was meant to attack." People v.

5  Strong, 87 Cal. App. 4th at 332.

6

7  Here, the sentencing court evaluated Petitioner based on, inter

8  alia, the probation report showing Petitioner's lengthy criminal

9  history, the letter from Petitioner's grandparents, the psychological

10  reports, and the arguments of counsel. Petitioner has not shown that

11  the trial court exercised its discretion in a manner inconsistent with

12  People v. Williams. See Bonilla v. Knowles, 2007 WL 516393, at *13

13  (E.D. Cal. Feb. 12, 2007), adopted, 2007 WL 776733 (E.D. Cal.

14  Mar. 12, 2007) (trial court did not abuse discretion in denying Romero

15  motion, where court considered petitioner's arguments and the

16  information in probation report).

17

18  Petitioner also alleges that the court based its decision on the

19  allegedly false information that Petitioner had received an eight-year

20  prison term in the San Bernardino case. According to Petitioner, he

21  received only a two-year term in that case pursuant to a plea

22  agreement, and was released on his own recognizance after signing a

23  "Vargas" waiver whereby Petitioner "agreed to be sentenced to all the

24  charges if he did not return as promised" (Supp. Reply Mem., p. 28).

25  Petitioner also contends that the court improperly relied on false

26  information from the prosecutor concerning the facts underlying the

27  San Bernardino charges, asserting that the prosecutor falsely told the

28  court that Petitioner stole tools from the Home Base in San Bernardino

1  and stabbed a security guard with a box cutter (Pet. Mem., Ex. 1,

2  p. 32).

3

4      A court may not base a sentence on materially false information.

5  See Townsend v. Burke, 334 U.S. 736, 740-41 (1948); United States v.

6  Wilson, 900 F.2d 1350, 1353 (9th Cir. 1990).  However, Petitioner has

7  not shown the court relied on any assertedly false information.

8  First, with respect to the sentence imposed in the San Bernardino

9  case, the docket in that case indicates that the court imposed an

10  eight-year sentence in December of 1999, and only imposed the two-year

11  sentence at resentencing in 2002, well after the sentencing in the

12  Ventura case at issue here.  Additionally, both the prosecutor and

13  Petitioner's counsel told the Ventura County Superior Court that they

14  believed Petitioner had not yet been sentenced in the San Bernardino

15  proceedings.  The record does not show that the Ventura County

16  Superior Court based its sentence, in whole or in part, on

17  Petitioner's receipt of an eight-year term in the San Bernardino case.

18

19      With respect to the court's alleged use of assertedly false

20  evidence concerning the San Bernardino incident, Petitioner's claim

21  fares no better.  In the San Bernardino case, Petitioner pled guilty

22  to aggravated assault on December 7, 1999 (see Respondent's Lodgment

23  S).  In Petitioner's written Romero motion, Petitioner's counsel

24  stated that it appeared from information obtained from the prosecution

25  in discovery that, in the San Bernardino case, a store employee was

26  injured "from being cut by a 'box cutter' or 'X-acta' knife, for which

27  the employee was sutured and released that day" (C.T. 29).  The

28  probation report stated that, according to a police report, when the

1 | security officer attempted to grab Petitioner, Petitioner struggled
2 | with the officer and a second employee, who saw a "box cutting type
3 | tool" fly out of Petitioner's hands (Respondent's Lodgment T, p. 17).
4 | The probation report also stated that the officer reported Petitioner
5 | lunged at the officer with a box cutter, cutting the officer near the
6 | wrist, and that the officer suffered a wound which required 20
7 | stitches to close (id.). Petitioner's counsel acknowledged at the
8 | hearing on July 18, 2001 that the store employee in the San Bernardino
9 | case had been "cut" (R.T. 7). Indeed, in the present Petition,
10 | Petitioner acknowledges the security guard received a "small cut on
11 | his arm" during an altercation following an alleged assault on
12 | Petitioner by the security guard and a co-worker (see Pet. Mem.,
13 | Ex. 1, p. 3).
14 |
15 |    Petitioner remained silent when the San Bernardino incident and
16 | the eight-year sentence were discussed in the Ventura proceedings,
17 | making no attempt to correct any allegedly false information.
18 | Petitioner has not shown that the Ventura County Superior Court relied
19 | on any allegedly false information at sentencing.
20 |
21 |    Petitioner further asserts the court failed to exercise "informed
22 | discretion" because the court sentenced Petitioner without the benefit
23 | of allegedly mitigating evidence and failed to continue the sentencing
24 | hearing sua sponte in order to obtain a new psychological report.
25 |
26 |    A criminal defendant is entitled to a sentencing decision made in
27 | the exercise of the "informed discretion" of the sentencing court.
28 | See United States v. Tucker, 404 U.S. 443, 447 (1972); People v.

1 | Belmontes, 34 Cal. 3d 335, 348 n.8, 193 Cal. Rptr. 882, 667 P.2d 686

2 | (1983). However, Petitioner's conclusory allegation that the court

3 | sentenced Petitioner without the benefit of allegedly mitigating

4 | evidence lacks merit. Petitioner has not shown what mitigating

5 | evidence existed that would have led the court to a different

6 | sentencing choice. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.

7 | 1995), cert. denied, 517 U.S. 1143 (1996) ("Conclusory allegations

8 | which are not supported by a statement of specific facts do not

9 | warrant habeas relief.").[15]

10 |

11 |     Petitioner also faults the trial court for failing sua sponte to

12 | continue sentencing to obtain a new psychological report. The Court

13 | of Appeal rejected this assertion, ruling that the court did not abuse

14 | its discretion in failing to continue the sentencing hearing (see

15 | Respondent's Lodgment F, pp. 3-4).

16 |

17 |     While a trial court may not deny a defense motion for a

18 | continuance arbitrarily or unreasonably, see Armant v. Marquez, 772

19 | F.2d 552, 556 (9th Cir. 1985), cert. denied, 475 U.S. 1099 (1986), to

20 | show a constitutional violation warranting habeas relief, Petitioner

21 | must show he suffered "actual prejudice" as a result of the denial of

22 | a continuance. See Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir.

23 | 1997), cert. denied, 524 U.S. 917 (1998) and 524 U.S. 922 (1998).

24 | Petitioner's general allegation that a continuance would have enabled

25 | Petitioner to make a more favorable presentation at sentencing is

26 | _____

27 |     [15]   As mentioned above, Petitioner has abandoned his claims
   that trial counsel assertedly failed to present certain
28 | mitigating evidence to the sentencing court.

28

1  insufficient to show the court erred in denying a continuance.  See
2  United States v. Sarno, 73 F.3d 1470, 1492-93 (9th Cir. 1995), cert.
3  denied, 518 U.S. 1020 (1996), and 519 U.S. 859 (1996) (general
4  allegations that a continuance would have permitted defendant to
5  prepare a better defense insufficient).

6

7      Furthermore, the record shows that the court ordered a report
8  from Dr. Emerick and continued sentencing several times until it
9  obtained the report.  At the beginning of the sentencing hearing on
10  November 21, 2001, the court stated: "I received a letter report from
11  Dr. Emerick . . ." (R.T. 41).  Although the court said that the new
12  report did not provide "much enlightenment," the court nevertheless
13  said it had "some insight" regarding Petitioner's mental condition
14  based on a previous report (R.T. 41).[16]  As the Court of Appeal
15  recognized (see Respondent's Lodgment F, pp. 3-4), the court had three
16  psychological reports and a probation report, and deemed that
17  information sufficient to impose sentence.  Moreover, Petitioner does
18  not disclose what a further psychological report supposedly would have
19  revealed that would have aided the court.  In these circumstances, the
20  sentencing court had sufficient information to impose sentence.  See
21  United States v. Rosales-Lopez, 617 F.2d 1349, 1357 (9th Cir. 1980),
22  aff'd on other grounds, 451 U.S. 182 (1981) (sentence reflected

23

24      [16]    Because Dr. Emerick apparently was unaware of the
25  court's referral question, her November 2001 report addressed the
     issue of Petitioner's competency, rather than expressly
26  addressing the issue of the possible mitigating effect of his
     mental illness (see Respondent's Lodgment T, p. 8).  However, the
27  report did relate that Dr. Emerick and Petitioner had discussed
     Petitioner's need to stay off drugs and on his medication in the
28  future (Respondent's Lodgment T, p. 9).

1  informed discretion where judge had presided over pretrial matters and

2  had studied the presentence report).  In these circumstances, the

3  court's failure to continue the hearing again did not violate the

4  Constitution.

5

6       Finally, in a separate but related contention, Petitioner

7  contends that the court improperly relied on hearsay evidence in

8  alleged violation of Crawford v. Washington, 541 U.S. 36 (2004)

9  ("Crawford"), specifically: (1) the prosecutor's statements in her

10 opposition to the Romero motion that, in the San Bernardino incident,

11 Petitioner had stolen tools and stabbed a security guard with a box

12 cutter;[17] and (2) the statement in the probation report that

13 Petitioner received an eight-year sentence in the San Bernardino case

14 (Pet. Mem., Ex. 1, pp. 32-34).  In Crawford, the United States Supreme

15 Court held that out-of-court testimonial statements are inadmissible

16 at trial unless the witness was unavailable to testify and the

17 defendant had a prior opportunity for cross-examination.  However, the

18 Supreme Court has held that the use of hearsay at sentencing does not

19 violate the Constitution.  See Williams v. New York, 337 U.S. 241,

20 246-52 (1949).  Although a defendant has a due process right not to be

21 _____

22      [17]   In the prosecutor's opposition to Petitioner's Romero
   motion, filed on July 17, 2001, the prosecutor stated:
23

24           San Bernardino now has a warrant out for defendant
          on a 211 charge that occurred after the incident in our
25        case.  In that case, he was stealing tools from Home
          [B]ase on 11/1/99 and when the security guard tried to
26        stop him, defendant stabbed the security guard with a
          box cutter.  The security guard required 17 stitches to
27        close the wound.

28 (C.T. 22-26).

1  sentenced on the basis of materially incorrect information, a sentence
2  may be based upon hearsay accompanied by "some minimal indicia of
3  reliability."  See United States v. Littlesun, 444 F.3d 1196, 1200
4  (9th Cir.), cert. denied, 127 S. Ct. 248 (2006) (because Crawford did
5  not expressly overrule Williams v. New York, "the law on hearsay at
6  sentencing is still what it was before Crawford; hearsay is admissible
7  at sentencing, so long as it is 'accompanied by some minimal indicia
8  of reliability'") (footnote omitted).

9

10      The prosecutor's description of the San Bernardino incident bore
11  sufficient indicia of reliability.  As indicated above, at the time of
12  sentencing in the Ventura case, Petitioner had pled guilty to
13  aggravated assault in the San Bernardino case (see Respondent's
14  Lodgment S).  Petitioner's counsel acknowledged that a store employee
15  was cut in the San Bernardino incident (R.T. 7; C.T. 29).  Thus, to
16  the extent the court relied on alleged hearsay statements concerning
17  the San Bernardino incident, those statements bore sufficient indicia
18  of reliability.

19

20      Petitioner also has failed to show that the statements in the
21  probation report concerning an eight-year sentence lacked sufficient
22  indicia of reliability.  The probation report was prepared in August
23  of 2001 and filed on November 21, 2001 (Respondent's Lodgment T,
24  pp. 10-26).  As of November 21, 2001, the docket in the San Bernardino
25  proceedings showed that, on December 7, 1999, Petitioner had pled
26  guilty to both the robbery and the aggravated assault and had received
27  an eight-year term (Respondent's Lodgment S).  Although the docket
28  showed Petitioner had given a "Vargas waiver," the docket did not

1  disclose the terms of that waiver.  Moreover, at an August 16, 2001

2  hearing preceding sentencing, the prosecutor said she did not believe

3  the San Bernardino court had imposed sentence yet, adding that she

4  thought the parties in that case had agreed on an eight-year term, but

5  she did "not think they ever imposed it" (R.T. 32).  At sentencing on

6  November 21, 2001, Petitioner's counsel said that the probation report

7  showed an eight-year sentence, but that Petitioner had not yet been

8  sentenced in the San Bernardino case (R.T. 42-43).  Under these

9  circumstances, the statement in the probation report concerning an

10  eight-year sentence in the San Bernardino case did not lack "minimal

11  indicia of reliability."

12

13       In sum, the state courts' rejection of Petitioner's challenge to

14  the trial court's denial of his Romero motion was not contrary to, or

15  an objectively unreasonable application of, any clearly established

16  Federal law as determined by the United States Supreme Court.  See 28

17  U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on

18  Ground Three of the Petition.

19

20  IV.  **Petitioner's Claim that the Prosecutor Allegedly Presented False**

21       **Evidence at Sentencing Does Not Merit Habeas Relief.**

22

23       The prosecution's knowing presentation of false evidence can

24  violate the Constitution if there is a reasonable likelihood that the

25  false evidence could have affected the judgment of the decisionmaker.

26  Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006); Hovey v. Ayers, 458

27  F.3d 892, 916 (9th Cir. 2006).  Petitioner contends that the

28  prosecutor falsely represented to the court that Petitioner had pled

1  guilty to assaulting and stabbing a security guard in the San

2  Bernardino case (Pet. Mem., Ex. 1, pp. 40-41).  Petitioner contends he

3  did not stab the security guard, and asserts that the assault charge

4  was dismissed as part of a plea bargain (Pet. Mem., Ex. 1, pp. 41-42).

5  Petitioner contends the police report (which is not in the record)

6  stated that the security guard assaulted Petitioner first (Pet. Mem.,

7  Ex. 1, p. 41).  Petitioner alleges that, at sentencing, the prosecutor

8  knew, but did not disclose to the judge, that: (1) Petitioner

9  allegedly had entered into a plea bargain in the San Bernardino case

10  calling for a two-year sentence and dismissal of the assault charge;

11  (2) Petitioner allegedly had pled guilty to the theft charge and the

12  assault charge had been dismissed; and (3) the plea bargain allegedly

13  included an agreement "not to persue [sic] a 3-strike case in this

14  incident" (Pet. Mem., Ex. 1, p. 43).

15

16      As indicated above, Petitioner initially pled guilty to both

17  charges in the San Bernardino case, including the aggravated assault

18  charge.  In the Ventura case, Petitioner's counsel acknowledged that

19  the victim in the San Bernardino case was cut and received stitches,

20  and Petitioner even admits that the victim in that case was cut during

21  the altercation (although Petitioner does not explain how the injury

22  occurred).[18]  Prior to November 21, 2001, the date that the court

23  heard the Romero motion and sentenced Petitioner, the docket of the

24

25      [18]     Petitioner alleges that he "can not prove that he did
26  not stab this security guard, as it would be impossible to prove
    that something did not happen, if it did not happen (Pet. Mem.,
27  Ex. 1, p. 47).  Petitioner's alleged inability to show he did not
    stab the security guard does not render false the prosecutor's
28  statement that Petitioner did so.

33

1  San Bernardino Superior Court showed that court <u>had</u> imposed an eight-

2  year prison term.  It was not until 2002, after Petitioner was

3  sentenced in the Ventura case, that the assault charge was dismissed

4  in the San Bernardino case and the court in that case imposed a two-

5  year sentence.  Additionally, the prosecutor told the Ventura court

6  that the prosecutor believed the San Bernardino Superior Court had not

7  sentenced Petitioner yet, despite the statement in the probation

8  report that Petitioner had received an eight-year term in that case.

9  In sum, Petitioner has not shown the prosecutor presented false

10  evidence to the court, or failed to correct any alleged false

11  evidence.

12

13      It follows that the state courts' rejection of this claim was not

14  contrary to, or an objectively unreasonable application of, any

15  clearly established Federal law as determined by the United States

16  Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled

17  to habeas relief on Ground Four of the Petition.

18

19  **V.   <u>Petitioner's Brady Claim Does Not Merit Habeas Relief.</u>**

20

21      The suppression by the prosecution of evidence favorable to an

22  accused violates due process "where the evidence is material either to

23  guilt or to punishment, irrespective of the good faith or bad faith of

24  the prosecution."  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)

25  ("<u>Brady</u>").  The three "essential elements" of a <u>Brady</u> claim are: "The

26  evidence at issue must be favorable to the accused, either because it

27  is exculpatory or because it is impeaching; [the] evidence must have

28  been suppressed by the State, either wilfully or inadvertently; and

34

1  prejudice must have ensued." _Banks v. Dretke_, 540 U.S. 668, 691

2  (2004) (citation and internal quotations omitted).

3

4  Petitioner alleges that the prosecution failed to disclose the

5  facts that Petitioner entered into a plea bargain in the San

6  Bernardino case whereby Petitioner had pled guilty to a "two year

7  mitigated sentence" in that case and the assault charges were

8  dismissed (Pet. Mem., Ex. 1, p. 49). As discussed above, however, at

9  the time of sentencing in the Ventura case, Petitioner had not yet

10  received a two-year sentence or the dismissal of the assault charge.

11  The prosecutor did not violate _Brady_ by failing to disclose

12  information about events that had not yet occurred.

13

14  Petitioner also alleges that the prosecutor suppressed purported

15  evidence that, following his arrest in the instant case, Petitioner

16  "made a deal" with the Oxnard police department whereby Petitioner

17  would purchase drugs as part of a police sting operation on three

18  occasions in return for dismissal of the Ventura charges (Pet. Mem.,

19  Ex. 1, pp. 51-52).[19] Petitioner contends this information would have

20  produced a more favorable result at sentencing (Pet. Mem., Ex. 1,

21  pp. 52-53). Because Petitioner had personal knowledge of these

22  alleged events, however, Petitioner cannot claim a _Brady_ violation.

23  _See United States v. Shaffer_, 789 F.2d 682, 690 (9th Cir. 1986)

24

25      [19]   In the _Romero_ motion, Petitioner's counsel stated that,
26  after Petitioner received a citation to appear in the Ventura
    County Superior Court on August 28, 1998 on the petty theft
27  charge, Petitioner failed to appear (_see_ C.T. 28). This
    statement appears inconsistent with Petitioner's claim that he
28  cooperated in police drug stings.